UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MEDECOR PHARMA LLC, and
BRADLEY SANDERS

VERSUS

FLEMING PHARMACEUTICALS,
INC.

CIVIL ACTION

NO. 12-291-JJB-RLB

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the court on the following cross motions for summary judgment: (1) Defendant Fleming and Company, Pharmaceuticals, Inc.'s Motion [doc. 62] for Summary Judgment, and (2) Plaintiffs Medecor Pharma, LLC and Bradley Sanders' Motion [doc. 63] for Partial Summary Judgment. Both motions have been opposed. Jurisdiction is based on 28 U.S.C. § 1332. Oral argument is not necessary. For the reasons provided herein, the court: (1) **GRANTS IN PART AND DENIES IN PART** the Defendant's Motion [doc. 62] for Summary Judgment and (2) **DENIES** the Plaintiffs' Motion [doc. 63] for Partial Summary Judgment.

### Background

This case arises out of an alleged binding agreement between Medecor Pharma, LLC ("Medecor") and Fleming and Company, Pharmaceuticals, Inc. ("Fleming"). Medecor is a specialty pharmaceutical company that focuses on providing prescription prenatal vitamin products. Fleming is also a pharmaceutical company, which develops and sells both prescription and over-the-counter products. In June 2011, Jim Tempesta ("Tempesta"), an independent contractor with Fleming, contacted Bradley Sanders ("Sanders"), the President of Medecor, in order to begin to foster a business relationship between the two entities. In the course of their discussions, Tempesta informed Sanders about Fleming's quick dissolve and vitamin taste-masking technology relating to chewable tablets.

1

On July 15, 2011, after receiving additional information from Tempesta, Medecor and Fleming executed a Confidential Information Non-Disclosure Agreement, prohibiting disclosure of certain information designated as confidential by the parties. After further discussions regarding a potential licensing agreement, Tempesta sent Sanders a document entitled "Summary of Principal Terms." Thereafter, on November 2, 2011, Sanders signed the document on behalf of Medecor and returned it, along with a $35,000 check. Fleming President Phil Dritsas also executed the "Summary of Principal Terms" document on November 11, 2011.

Subsequent to the execution of the "Summary of Principal Terms" document, both Fleming and Medecor engaged in additional discussion. Nevertheless, on December 22, 2011, Fleming agreed to sell many of its branded assets—including the quick dissolve taste masking technology—to Valeant Pharmaceuticals International, Inc. ("Valeant"). In addition, Fleming disclosed the "Summary of Principal Terms" document to Valeant. Eventually, after further discussions between Fleming and Medecor, Fleming terminated all negotiations with Medecor and repaid the $35,000.

As a result, Medecor and Bradley Sanders filed suit against Fleming. First, the plaintiffs allege that the document entitled "Summary of Principal Terms" was a formal licensing agreement based on the oral and written negotiations between the parties, and thus, Fleming breached the contract through agreeing to sell the technology to Valeant. Furthermore, the plaintiffs allege that Fleming violated the confidentiality provision of the "Summary of Principal Terms" document and the Confidentiality Information Non-Disclosure Agreement by disclosing the "Summary of Principal Terms" document to Valeant, and as a result, the plaintiffs sustained actual damages.

**Analysis**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. P. 56(a). The movant must demonstrate that there is no genuine issue of material fact for trial. When the non-moving party has the burden of proof at trial, the movant need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party can do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not . . . competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991).

1. <u>Breach of Contract – "Summary of Principal Terms" Document</u>

Looking first at Fleming's alleged breach of the "Summary of Principal Terms" document through selling assets and technology to Valeant, the primary issue is whether the "Summary of Principal Terms" document, as a whole, was a binding contract between Fleming and Medecor, and thus, whether Fleming was bound to license the relevant assets and technology to Medecor. "Interpretation of a contract is a determination of the common intent of the parties." *SE Property Holdings, LLC v. Unified Recovery Group, LLC*, 2013 WL 1385398, at *6 (M.D.

3

La. Apr. 3, 2013) (quoting La. Civ. Code art. 2045) (internal quotation marks omitted). "When the words of a contract are clear and lead to no absurd result, no further interpretation is permitted and the court must apply the contract as written." *Monaghan v. United Rentals, Inc.*, 2011 WL 6148636, at *4 (M.D. La. Dec. 9, 2011) (citing La. Civ. Code art. 2046). "The words of contract must be attributed their common and accepted meaning and words susceptible of different meanings must be given that meaning which conforms with the object of the contract." *Id.* (citing La. Civ. Code art. 2047, 2048).

In the present matter, the document entitled "Summary of Principal Terms" actually contains an "Effect of Term Sheet" provision, which provides the following:

> With the exception of the confidentiality provisions below, this is a non-binding term sheet for discussion purposes only and neither party shall be bound by any other provision of this term sheet unless and until the parties execute a definitive agreement, signed by an authorized officer of each party. Any resulting definitive agreement between the parties would be subject to additional terms usual and customary to this type of agreement and would require approval by Fleming's Board of Directors.

(Doc. 62-7). Based on the clear, unambiguous language of this provision, it is readily apparent that the "Summary of Principal Terms" document was intended to be a "non-binding term sheet for discussion purposes only."[1] With the exception of the confidentiality provision, the document did not bind either party to "any . . . provision of [the] term sheet unless and until the parties execute a definitive agreement, signed by an authorized officer of each party." Based on the clear wording of the document, the term sheet was not this "definitive agreement." The term sheet was explicitly a "non-binding" document, for discussion purposes only.

The plaintiffs cite to previous cases from this Court to buttress their argument that the term sheet is a binding agreement between the parties. (*See* Doc. 63-1, p. 7–8). However, those

---

[1] This is subject to the exception that the confidentiality provision of the document is binding, and this provision is further discussed below.

4

cases are dissimilar to the matter at hand. Specifically, in the present matter, the "Summary of Principal Terms" document clearly and unambiguously provides that it is meant to be "non-binding" and "for discussion purposes only." There is no ambiguity or room for interpretation; the parties unmistakably provided that it did not bind them. This type of explicit indication was not present in those prior cases. *See Ferrara Fire Apparatus, Inc. v. JLG Industries, Inc.*, 2010 WL 775162 (M.D. La. Mar. 5, 2010); *Chevron U.S.A. Inc. v. Martin Exploration Co.*, 447 So. 2d 469 (La. 1984); *Dickerson v. Cajun Communications of Texas, Inc.*, 910 So. 2d 477 (La. App. 2 Cir. 2005).

The plaintiffs also argue that sending the $35,000 check, and Fleming's subsequent deposit of that check, transformed the expressly non-binding term sheet into a binding contract. Based on the clear and unambiguous provisions of the term sheet, this Court refuses to find as such. Furthermore, in its motion for summary judgment, the plaintiffs state that "[t]he Term Sheet expressly provided that it would become the definitive (binding) agreement upon payment of the license fee" and that "[t]his aspect of the Term Sheet is not ambiguous." (Doc. 63-1, p. 9). The term sheet provides the following: "License Fee: MEDECOR would pay an upfront License and Development Fee (License Fee) of $35,000 upon execution of definitive business agreement." (Doc. 62-7, p. 2). No ordinary, reasonable person would construe that as "expressly" stating that the term sheet would become this definitive agreement upon payment of the $35,000. Rather, the document is clearly providing that Medecor would have to pay the $35,000 fee upon execution of this separate and independent "definitive business agreement." The term sheet did not become binding upon the payment and deposit of the $35,000, as the agreed-upon provisions of the term sheet unmistakably exhibit that the parties did not intend as such.[2]

---

[2] It must also be mentioned that Fleming repaid the $35,000 payment upon ceasing negotiations with Medecor. (Doc. 62-2, p. 7, ¶ 46).

5

Finally, the plaintiffs attempt to rely on the actions of Jim Tempesta—an independent contractor for Fleming who was retained to foster business relationships—in order to transform the explicitly non-binding term sheet into a binding agreement. Based on this court review of all of the relevant communications involving Mr. Tempesta, any actions on the part of Mr. Tempesta do not override the fact that the term sheet—which the plaintiffs rely upon and agreed to—specifically, explicitly, and unambiguously provides it is non-binding between the parties and is for discussion purposes only.

Therefore, based on the plain provisions of the "Summary of Principal Terms" document, this Court finds that there is no genuine issue of material fact regarding the non-binding nature of the term sheet, and therefore, Fleming is entitled to judgment as a matter of law. Accordingly, this Court must dismiss the plaintiffs' claim that Fleming breached the "Summary of Principal Terms" document through its sale of assets and technology to Valeant, because the "Summary of Principal Terms" document was not a binding licensing agreement.

2. <u>Breach of Contract – "Confidentiality" Provision of the "Summary of Principal Terms" Document</u>

In addition, the plaintiffs claim that Fleming breached the binding confidentiality provision of the "Summary of Principal Terms" document. "To prevail on a breach of contract claim, the plaintiff must demonstrate three elements: '(1) that the obligor undertook an obligation to perform; (2) that the obligor failed to perform the obligation (the breach); and (3) that the failure to perform resulted in damages to the obligee.'" *SJB Group, LLC v. TBE Group, Inc.*, 2013 WL 6194571, at *8 (M.D. La. Nov. 26, 2013) (quoting *Walker v. Pelican Pub. Co., Inc.*, 2011 WL 2976271, at *6 (E.D. La. July 22, 2011)). Whereas the term sheet as a whole is non-binding, the confidentiality provision of the term sheet does bind the two parties, as is clearly

6

Case 3:12-cv-00291-JJB-RLB   Document 88   01/06/14   Page 6 of 11

conveyed in the relevant "Effect of Term Sheet" section.[3] The binding "Confidentiality" section states that:

> Each party hereto shall keep this term sheet, the proposed terms of the transaction, and all other information related to the matters described herein confidential and neither party shall, without the prior written consent of the other party, issue any statement or communication to the public, to the press or any third party (<u>other than officers, employees, attorneys, bankers and agents as may be necessary to effect the transaction contemplated hereby or as required by law</u>) regarding the proposed transaction, or otherwise disclose to any third party the existence of this term sheet or any other communication between the parties with respect to the proposed transaction.

(Doc. 62-7, p. 3) (emphasis added).

The plaintiffs claim that Fleming violated their confidentiality obligation by disclosing the term sheet to Valeant as part of the negotiations between Fleming and Valeant. The evidence establishes that Fleming disclosed the term sheet to Valeant, and Fleming even acknowledges this fact in its briefs. (Doc. 63-42, p. 14, lines 4–18; p. 51, line 18 through p. 52, line 17; Doc. 83, p. 13). However, Fleming argues that its disclosure was in accordance with an exception to its confidentiality obligation because it disclosed the term sheet to "effect the transaction contemplated" between Fleming and Medecor. More specifically, Fleming claims that this was a "necessary" disclosure pursuant to the exception, "as Fleming contemplated that Valeant may have an interest in pursuing this potential business arrangement with Medecor after the underlying technology was sold to Valeant." (Doc. 83, p. 13–14). Nevertheless, the plaintiffs contend that the exception relied upon by the defendant is inapplicable to the situation at hand, and thus, Fleming's disclosure to Valeant violated its obligation under the confidentiality provision.

---

[3] The "Effect of Term Sheet" section specifies that the document "is a non-binding term sheet," "[w]ith the exception of the confidentiality provision." (Doc. 62-7, p. 3)

7

Case 3:12-cv-00291-JJB-RLB   Document 88   01/06/14   Page 7 of 11

While the "Effect of Term Sheet" section is clear and unambiguous, the "Confidentiality" section that follows it does not share in this clarity. To defend against the plaintiffs' breach of contract claim, Fleming relies on the exception to the confidentiality/non-disclosure requirement that allows disclosure of the term sheet without prior written consent to "officers, employees, attorneys, bankers and agents as may be necessary to effect the transaction contemplated hereby or as required by law." (Doc. 62-7, p. 3). Based on the language and context, there is ambiguity regarding whether the intent is to allow disclosure to external entities without prior consent, such as Valeant, or whether the exception was meant to limit disclosure without prior written consent to individuals within and associated with Medecor and Fleming. "Although the initial determination of whether a contract is ambiguous is a question of law, if the contract is found to be ambiguous, determination of the parties' intent is a question of fact." *Transource Intern., Inc. v. Trinity Industries, Inc.*, 725 F.2d 274, 289 (citing *Richland Plantation Co. v. Justiss-Mears Oil Co.*, 671 F.2d 154, 156 (5th Cir. 1982)). Based on the language utilized, this Court finds the exception contained within the confidentiality provision—which Fleming relies on in defense of the breach of contract claim—is ambiguous. Because of this, there is a genuine issue of material fact regarding the parties' intent to this specific provision, and therefore, a genuine issue of material fact as to whether Fleming violated its confidentiality obligation by disclosing the term sheet to Valeant.

Additionally, there is a genuine issue of material fact as to whether the plaintiffs suffered any damages as a result of the alleged violation of the confidentiality provision. Damage to the obligee is an essential element of any breach of contract claim. *See SJB Group, LLC*, 2013 WL 6194571, at *8. In this case, the parties disagree regarding whether the alleged violation resulted in any damages, with the plaintiffs claiming upwards of $100 million in damages and the

defendant asserting that there are no possible damages. While it is extremely difficult to fathom any argument that a breach of the confidentiality provision resulted in damages approaching $100 million, there is at least a genuine issue of material fact regarding whether the plaintiffs suffered any actual damages resulting from Fleming's alleged violation of its confidentiality obligation. Therefore, this Court cannot grant summary judgment as to the claim that Fleming breached the confidentiality provision of the term sheet, as there are multiple, genuine issues of material fact for trial.

3. <u>Breach of Contract – Confidentiality Information Non-Disclosure Agreement</u>

Turning finally to the plaintiffs' claim that Fleming breached the Confidentiality Information Non-Disclosure Agreement, the agreement, signed by both Fleming and Medecor, provides:

1. In connection with the Proposed Relationship, each party may provide or disclose to the other party certain confidential or proprietary information, including but not limited to trade secrets, formulations, know-how, processes, designs, drawings, tools, techniques, operating and marketing and financial data and plans, software and derivative works, inventions (whether patentable or not), improvements and copyrightable material, any or all of which may be communicated in any form, and whether previously, presently or subsequently disclosed (the "Information"). Information disclosed in writing or other tangible form shall be marked on its face as confidential by the disclosing party and Information disclosed orally shall be summarized in writing and submitted to the other party within thirty (30) days of disclosure.

2. Both parties agree that all Information is and shall remain the sole property of the disclosing party and that no license is granted to the receiving party hereby.

3. The receiving party agrees (i) to hold in confidence and maintain as confidential the Information, (ii) that it will not, without prior written consent of the disclosing party, divulge the Information or any information directly and substantially derived therefrom to any third party, except to such employees or agents of receiving party to whom disclosure is necessary to evaluate the Information and who (to the extent not already bound in writing to maintain the secrecy of the Information) have agreed in writing to be bound by this Agreement, and (iii) not to make any use of the Information except to evaluate the Proposed Relationship or to perform services in connection with the Proposed Relationship.

(Doc. 62-5, p. 3). Accordingly, the Non-Disclosure Agreement provides that written information can be made confidential through being "marked on its face as confidential by the disclosing party." As mentioned above, Fleming disclosed the term sheet to Valeant in the course of their negotiations. Nevertheless, Fleming avers that it did not divulge to Valeant any information that was disclosed pursuant to the Non-Disclosure Agreement.[4] However, the plaintiffs point out that the term sheet is identified as "CONFIDENTIAL" on its face, and thus, is subject to the Non-Disclosure Agreement's provisions. (*See* doc. 62-7, p. 2; doc. 78-1, p. 3). Nonetheless, there is ambiguity and uncertainty regarding who marked the form as confidential. The Non-Disclosure Agreement requires the "disclosing party" to mark the item as confidential, at which point the "receiving party" is bound to keep it confidential. However, the agreement does not bind the disclosing party to keep the item confidential; only the receiving party has this obligation. Based on the evidence, there is no indication who marked the term sheet as confidential, and which party would be the "disclosing party" and which would be the "receiving party." This distinction is relevant regarding whether Fleming's disclosure violated the provisions of the Non-Disclosure Agreement. Accordingly, there are sufficient issues of material fact such that summary judgment would be inappropriate at the present time.

Furthermore, similar to the alleged breach of the term sheet's confidentiality provision, there is also a genuine issue of material fact as to whether the plaintiffs suffered damages resulting from any violation of the Non-Disclosure Agreement. The agreement provides that:

> Each party expressly acknowledges that breach of its obligations under this Agreement would cause irreparable injury to the disclosing party and that money damages would not be a sufficient remedy. Consequently, as a remedy for breach by the receiving party, the disclosing party shall be entitled to seek specific performance and injunctive relief, as well as other remedies available at law or equity. The failure of either party to enforce the provisions hereof shall not be

---

[4] Paragraph 1 of the Confidential Information Non-Disclosure Agreement delineates the process to disclose an item pursuant to the agreement. (*See* doc. 62-5, p. 2, ¶ 1).

10

> construed to be a waiver of such provisions or of the right to enforce such provisions. The losing party in any action to enforce this Agreement will pay the prevailing party's reasonable attorney's fees and other costs and expenses incurred in connection with such action.

(Doc. 62-5, p. 4). Nevertheless, the parties take the same position as to this breach of contract claim, with the plaintiffs arguing for damages due to lost future sales that resulted from the breach, and Fleming contending that the plaintiffs suffered zero damages from any potential violation of its obligation under the agreement. As aforementioned, actual damages are one of the essential elements for a breach of contract claim. While any argument that the plaintiffs suffered $100 million in damages as a result of a breach of the Non-Disclosure Agreement is tenuous at best, there is at least a genuine issue of material fact regarding whether any damages resulted from the alleged violation of the agreement. Accordingly, this Court finds that there are multiple issues of material fact as to the plaintiffs' claim that Fleming breached the Non-Disclosure, and thus, summary judgment is improper.

## Conclusion

Therefore, (1) the Defendant's Motion [doc. 62] for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, as provided herein, and (2) the Plaintiffs' Motion [doc. 63] for Partial Summary Judgment is **DENIED**.

Signed in Baton Rouge, Louisiana, on January 6, 2014.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**